Keyes, to use, *v.* Continental Casualty Company, Appellant.

Argued December 17, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*H. Rook Goshorn,* with him *Harry S. Ambler, Jr.,* for appellant.

*Langdon W. Harris,* of *Herman & Harris,* with him *Felice E. Darkow,* for appellee.

OPINION BY KELLER, P. J., February 28, 1936:

Action in assumpsit on a policy of casualty insurance, insuring the owner of an automobile against liability for accidental personal injury to another. It was tried by a judge of the municipal court without a jury.

The appellant raises a number of questions, which we have carefully considered. We find substantial merit in only two of them, viz.: (1) The defendant's motion to amend the affidavit of defense should have been allowed; (2) the evidence in the record failed to show a substantial compliance by the assured, or any one in her behalf, with the clause in the policy requiring prompt—"immediate"—notice of any suit for damages against the assured, growing out of an accident covered by the policy, by forwarding to the insurer the summons or other process served upon her.

The facts necessary for an understanding of the case are as follows:

The legal plaintiff, Vera E. Keyes, while a resident of the State of Ohio, secured from the defendant insurance company, through its general agents, Case & West, the policy in suit insuring her, inter alia, against liability for damages on account of bodily injuries accidentally suffered by reason of the ownership or use of the automobile described in the policy to the amount

of $5,000 for one person, and $10,000 in all. While the policy was in force she moved her residence to the State of Massachusetts, where she was obliged by law to take out such insurance with a company authorized to do business in that State, which the defendant company was not; she, accordingly, took out a similar policy, in the same amounts, with the use plaintiff, New Hampshire Mutual Liability Company. Defendant's policy contained the following clause: "5. OTHER INSURANCE. If the assured named in the Schedule carry a policy of another insurer against a loss covered by this policy, such Assured shall not be entitled to recover from the Company a larger proportion of the entire loss than the amount otherwise payable under this policy bears to the total amount of valid and collectible insurance applicable to the said loss."

On May 26, 1927, when both policies were in force, the legal plaintiff, while driving the automobile owned by her and referred to in said policies of insurance, in East Woburn, Massachusetts, ran into and severely injured a child five years old, named Joseph Perry. The legal plaintiff promptly mailed a letter to Case & West, general agents of the defendant company informing them of the accident, and on August 10, 1927, the use plaintiff wrote defendant company in care of Case & West, notifying it that Miss Keyes' car had on May 26, 1927 caused severe injuries to one Joseph Terry (sic) and that she had informed it that her car was also insured in defendant company. The letter went on to say: "In view of this fact, it seems to us as if this was a case in which both companies were implicated and have got to combine toward an adjustment of the claim. We have made a complete investigation of this accident and will at any time be glad to discuss the case with any of your representatives."

The defendant company made no reply to the use

plaintiff but on August 15, 1927 wrote the legal plaintiff that it had received a letter from New Hampshire Mutual Liability Co. advising that she had had an accident on May 26, which caused some injury to one Joseph Terry (sic) and that she was also carrying liability insurance on her car with it, continuing: "Will you kindly give us the detailed information with reference to this accident so we can properly handle same? We are inclosing a blank report and will appreciate it if you will complete and return same. Since you have moved to Massachusetts it is possible you will want to discontinue our policy, and if this is the case, we will ask that you kindly return the policy which we mailed you for the current year, No. CA842103. The accident would of course be covered under the old policy which was in force in May. Thanking you for your kind attention, we are" etc.

Neither the legal plaintiff nor the use plaintiff replied to this letter and nothing further seems to have been done regarding it.

The claim not having been settled, the said Joseph Perry, by his father Joseph W. Perry, and Joseph W. Perry in his own right brought an action against the legal plaintiff on December 26, 1929 in the District Court of the United States at Trenton, N. J.

Neither the legal plaintiff nor the use plaintiff gave the defendant company any notice of the bringing of this action until over eleven months after suit was brought, and two or three days before it was listed for trial; nor was the summons or other process in said action, or any copy of it, ever sent to defendant company by the legal plaintiff or by the use plaintiff, to whom the same had been sent by the legal plaintiff. The use plaintiff had in the meantime assumed the defense of said action and on November 29, 1930 their attorneys wrote defendant company a letter concerning it, which is not printed in the record, but the defend-

ant's reply is printed, in the margin.[1] This letter was incorrect as to defendant company having received no report of an accident which occurred on May 26, 1927; but it correctly stated the fact that no notice of the filing of the law suit had been given it nor any summons in the suit forwarded to it. The lower court, in stating the contrary in its opinion, is clearly in error. The appellee admits it. Defendant disclaimed liability because of such failure to give written notice. The legal plaintiff and use plaintiff attempt to confine the disclaimer to failure to give notice of the *accident*,—and the court below, apparently, took the same view—but a fair construction of the letter is otherwise. The letter complains not only of the insured's failure to "report" the

---

[1] "CONTINENTAL CASUALTY COMPANY
CHICAGO

December 1, 1930

Messrs. Herman and Harris
1518 Walnut Street,
Philadelphia, Pennsylvania
Gentlemen:

Re: Vera E. Keyes

Your letter of November 29th, addressed to the attention of Mr. E. V. Mitchell, has been referred to me. Your letter constitutes the first notice of this accident which the Continental or any agent of it has received from Miss Keyes of an accident which is alleged to have occurred on May 26, 1927. Miss Keyes not only did not report the accident to the company but she gave us no notice whatever of the filing of the lawsuit and did not send summons to this office or any representative of the Company.

You, of course, are aware of the fact that our policy provided that Miss Keyes would give us prompt written notice. In view of this violation, you are hereby notified, as attorneys for Miss Keyes, that the Continental Casualty Company disclaims any and all liability to protect Miss Keyes against her liability, if any, as a result of this accident.

Yours very truly,
N. L. Beck
ASSISTANT GENERAL ATTORNEY"

accident, but also that "she gave us no notice whatever of the filing of the law suit and did not send summons to this office or any representative of the Company." When immediately thereafter it disclaims liability because of the failure to give "prompt written notice," a reasonable view is that the disclaimer was based on the failure to give notice of the law suit and forward summons as well as to report the accident; and that there was no waiver of all defenses except failure to report the accident.

The policy provides: "1. Notice, Claims and Suits. The Assured shall give to the Company or to its authorized agent immediate written notice of any accident covered hereby and shall also give like notice of claims for damages on account of such accidents. If any suit is brought against Assured to recover such damages the Assured shall immediately forward to the Company, at its office in Chicago, every summons or other process served upon him. The Company shall have the exclusive right to contest or settle any of said suits or claims. The Assured shall not interfere in any way respecting any negotiations for the settlement of any claim or suit, nor in the conduct of any legal proceedings, but shall, at all times, at the request of the Company, render to it all possible cooperation and assistance. The Assured shall not voluntarily admit any liability for an accident and no loss arising from a liability which has been voluntarily assumed by the Assured shall be covered hereunder."

The legal plaintiff, of course, could not forward the summons which had been served on her to both insurers. She elected to send it to the use plaintiff. But if she intended to look to the defendant company for protection, she could, at least, have notified it of the bringing of the suit and forwarded a copy of the summons; and if the use plaintiff intended to look to defendant company as a co-insurer, it could certainly have

done the same. The defendant company had, up to that time, done nothing that relieved the legal plaintiff, or the use plaintiff, if acting in her right, from complying with the plain provisions of the policy.

After defendant's disclaimer of liability the use plaintiff, acting for the legal plaintiff, settled the action for $3,400 and paid counsel fee and expenses of $160. The settlement was reasonable and to the advantage of the legal plaintiff. This action was brought on July 6, 1933 to recover the one-half of the sum so paid, plus interest.

The statement of claim was filed on July 18, 1933 and the affidavit of defense on August 2, 1933.

On April 5, 1935 the defendant obtained a rule to show cause why its affidavit of defense should not be amended by averments that it was informed, believed and expected to be able to prove that the payment alleged to have been made by plaintiff in settlement of said action was made more than two years before the institution of the present suit, and that any right of action thereon was therefore barred under paragraph 4 of the policy of insurance which provided, inter alia, that "In no event shall any action be maintained against the Company under any of the insuring clauses of this policy unless brought within two years after right of action accrues, provided, however, that if any time limitation of this policy, with respect to giving notice or instituting suit, conflicts with the law controlling this contract, the minimum period permitted by such law shall be considered as substituted for such limitation." The statement of claim contained no averment as to the date when payment was made.

The court discharged the rule.

Subsequently, on the trial, it appeared in evidence that the payment in settlement of the Perry suit had been made on December 6, 1930. The defendant again moved for leave to amend its affidavit of defense as above set forth. The court refused to allow the amend-

ment on the ground that as defendant had not appealed from the prior order. refusing the amendment it was res judicata. The reason was clearly wrong, for the order was interlocutory and if defendant had appealed from it the appeal would have been quashed.

The long established rule that a defendant relying on the defense of the statute of limitations in an action of assumpsit must specially plead it, (Barclay v. Barclay, 206 Pa. 307, 55 A. 985), has no application here. It is confined to *statutes of limitation,* not to a time limitation in a contract. In Hocking v. Howard Ins. Co., 130 Pa. 170, 18 A. 614, where the policy provided that any action upon it must be brought within twelve months after the fire occurred, the plaintiff filed proofs of loss on March 28, 1885 and brought suit on April 17, 1885. He recovered a verdict and judgment, which the Supreme Court reversed because the action was prematurely brought. (Howard Ins. Co. v. Hocking, 115 Pa. 415, 8 A. 592). A new action was brought on November 21, 1887. The defendant pleaded non assumpsit. The plaintiff offered the policy, and proved notice of loss, and that proofs of loss had been furnished and the value of the property destroyed, and put in evidence the record in the prior suit. The defendant offered no testimony but requested the court to charge the jury: "That this action was not brought within the time required by the terms and conditions of the policy on which it was founded, and the verdict must be for the defendant." The lower court refused the point and directed a verdict for plaintiff, and later refused defendant's motion for judgment non obstante veredicto. The Supreme Court reversed. Speaking through Mr. Justice MITCHELL, they said: "The validity of the special agreement as to the time of bringing any action on the policy is conceded ...... It follows therefore that the statutes of limitation do not apply. The very object and spirit of the agreement are to exclude the operation of the stat-

ute which would otherwise govern ...... It is now argued, first, that the issue upon which that action was finally decided against plaintiff was not raised in the pleadings when it should have been, so as to afford plaintiff an opportunity to discontinue, and bring a new suit after the sixty days, and still within the stipulated twelve months, but was held back by the defendant until the trial, after the twelve months had elapsed, and therefore that the limitation should be treated as waived. It is undoubtedly true that any act which tends to mislead the plaintiff, while parties are dealing on friendly terms, to avoid litigation, will be held to be evidence of a waiver of such a limitation as the present; but after suit has been brought, and the parties are dealing at arm's length, the rule does not apply with the same strictness, and much more positive evidence of actual misleading, if not of intent to mislead, is necessary to prove a waiver by estoppel. A defendant, ordinarily, is only bound to make such defence as he thinks sufficient for the pending action. If he chooses to omit some special defence, he may do so, and take the risk that if he fails on the others, he has thus lost his chance on the omitted ground, but, if he succeeds, he still has it in reserve, in case of a second action. Experience in actions of ejectment affords ample illustration of this practice. In the former action between these parties, the defendant made its defence partly on the ground that the action was premature. The plaintiff, on the other hand, brought and pursued his action on the ground that, as the insurance was on a single building, his notice of a total loss was sufficient, and the sixty days had elapsed between such notice and the suit. Each party stood upon his own view of the law, and this court sustained the defence. We fail to see in this anything that can be considered a waiver of the limitation in favor of the present action ...... It may be hard for the plaintiff to lose his case on this

single point, after an apparent victory on the merits; but his agreement is explicit and unavoidable, and to sustain this action in the face of it would be to substitute a new contract for the one which the parties have lawfully made for themselves. That is not the duty or the province of courts." See also Flynn v. Peoples' Mut. Live Stock Ins. Co., 4 Pa. Superior Ct. 137 (RICE, P. J.).

Of course, the Practice Act of 1915, P. L. 483, has to some extent changed the law as thus declared. It provides in section 16, "Neither party shall be permitted at the trial to make any defense which is not set forth in the affidavit of defense, or plaintiff's reply, as the case may be, except as provided in sections seven [executors, etc.] and thirteen" [actions of trespass]; and in Ruth-Hastings Co. v. Slattery, 266 Pa. 288, 109 A. 695, the Supreme Court ruled that section 16, limiting defenses to those raised by the affidavit of defense should be strictly enforced. But that principle could only apply in this case if the plaintiff's statement of claim had set forth, in its averments, the date when payment of the Perry claim had been made. The defendant was not obliged to go outside the statement of claim to discover such a material fact as the date of payment. Until that affirmatively appeared in the pleadings, or in the evidence, no duty rested on the defendant to present a defense based thereon—that the action ·was barred by the terms and conditions of the policy on which it was founded.

We are, therefore, of opinion that the defendant should have been permitted to amend its affidavit of defense, as asked for, thus allowing it to make defense that the action was brought too late. Unless the plaintiff can bring herself within the proviso referred to in paragraph 4 of the policy (18a), this will rule the case for the defendant.

We are also, of opinion, that failure by the legal

plaintiff or the use plaintiff to give the defendant notice of the bringing of the action until over eleven months after suit brought and two days before the case was listed for trial, and failure to forward to defendant the summons in said action, or a copy of it, was such a violation of the terms of the policy, as in the absence of a waiver or reasonable excuse for failing to do so, would prevent a recovery. The letters of defendant company of August 15, 1927 and December 1, 1930 furnished no such waiver or reasonable excuse for failure to comply with the terms and conditions of the policy. On a new trial the plaintiff may be able to produce evidence along those lines which was lacking on this trial.

The judgment is reversed and a new trial awarded.