BASIL CRANK *et al. v.* J. B. MCLAUGHLIN, *Commissioner of Agriculture*

(CC 656)

Submitted October 13, 1942. Decided November 24, 1942.

*Ritchie, Hill & Thomas* and *Townsend & Townsend,* for plaintiff.

*William S. Wysong,* Attorney General, and *Julius Cohen,* Special Assistant Attorney General, for defendant.

Fox, PRESIDENT:

In this proceeding, under the Uniform Declaratory Judgment Act, the petitioners seek a decree declaring illegal and void the action of J. B. McLaughlin, as Commissioner of Agriculture of the State of West Virginia, in abrogating and annulling certain ordinances of the City of Charleston, with respect to the sale of milk and cream within said city.

On the 4th day of January, 1928, the Standard Milk Ordinance of the United States Public Health Service, as modified, was adopted by the council of the City of Charleston. Sections three and eleven of the said ordinance, as appears from the brief of the defendant, contained the following provisions: Section three makes it "unlawful for any person, firm, association, or corporation to bring into or receive into the City of Charleston, for sale, or to sell, or offer for sale therein, or to have on hand any milk or milk product * * * who does not possess an unrevoked permit from the health officer of the City of Charleston * * *." And section eleven prescribes that "no milk or cream shall be sold in the City of Charleston that has been pasteurized outside of the County of Kanawha, except as may be authorized by the health officer." These ordinances remained in force and effect, unquestioned, until the 10th day of November, 1941, when J. B. McLaughlin, as Commissioner of Agriculture, assuming to act under sections 1, 2 and 10, article 2, chapter 19 of the Code, as last amended by Chapter 3, Acts of the Legislature of 1939, promulgated the following regulation:

."Under and by virtue of the authority conferred upon me by law, and particularly that contained

in Sections 1, 2 and 10 of Article 2, Chapter 19 of the Code of West Virginia, as last amended, I, J. B. McLaughlin, Commissioner of Agriculture of the State of West Virginia, do hereby find:

1. That the Standard Milk Ordinance of the City of Charleston, West Virginia, with respect to certain provisions thereof hereinafter mentioned, unduly restricts the flow of an adequate supply of wholesome milk at fair and reasonable prices to the Charleston area, by unreasonably restricting fair competition in said area, and in effect creating a condition in said area, which is wholly detrimental to the interests of the consuming and producing public, as well as legitimate competitors not now established in said market;

2. That said provisions of said ordinance hereinafter mentioned operate only incidentally as a safeguard for the health of the consuming public, by reason of the fact that adequate State and Federal laws, rules and regulations insure to the consuming public in the Charleston area an ample supply of wholesome milk without the benefit of the provisions of the said Milk Ordinance of the City of Charleston, hereinafter referred to, inasmuch as the Standard Milk Ordinance adopted by the Federal Government, as well as by the State Government, amply protects the consuming public in this regard;

3. That it is necessary, in order to provide the consuming public in the Charleston area with a uniform grade and quality of milk and milk products at a fair and reasonable price, that said Milk Ordinance of the City of Charleston, in the respects hereinafter specifically mentioned, be abrogated and be declared to be null and void and of no effect whatsoever, they being in direct contravention to the established policy of the State, and in conflict with the statutes of the State in relation thereto.

WHEREFORE, I, the said J. B. McLaughlin, Commissioner of Agriculture as aforesaid, do hereby establish and promulgate the following regulations:

That sections 3 and 11 of the Standard Milk Ordinance, as modified and adopted by the Common Council of the City of Charleston, West Vir-

ginia, and now in force and effect, be and the same are hereby abrogated, modified, and are declared to be null and void and of no force and effect whatsoever, to the following extent:

(1) Sec. 3. Any milk or milk products, mentioned in this section with respect to which the Commissioner of Agriculture is advised as having been approved by the proper authorities of the State of West Virginia, shall be eligible to be brought into and received into the said City of Charleston, for sale or for offer of sale, to the same extent as if an unrevoked permit were issued by the Health Officer of said City of Charleston.

(2) Sec. 11. The provisions of this section are abrogated and declared null and void and of no effect in their entirety.

Given under my hand, and promulgated at the State Capitol at Charleston, West Virginia, this the 10th day of November, 1941."

It will be observed that under this regulation, the only requirements as to the sale of milk and cream in the City of Charleston is that the products be approved by the proper authorities of the state, and, if so approved, no permit is required of the city; and further, that the provision of the city ordinance requiring all milk and cream sold in the city to have been pasteurized in Kanawha County is abrogated and declared null and void.

The petitioners, who are engaged in the business of producing and selling milk in the City of Charleston, filed their petition in the Circuit Court of Kanawha County asking that the action of the said commissioner be declared illegal and void. They aver that they have expended large sums of money in equipping their dairies and placing themselves in a position to comply with the ordinances of the City of Charleston, and that they are prejudiced by the action of the commissioner. The manner of their prejudice is not clearly explained, the principal point being that they might, if they sell milk in Charleston without having complied with the city ordinance, subject themselves to the danger of fines and penalties, which might be imposed by the proper authorities of the city. It is

quite apparent that the real ground upon which their claims of prejudice rest is that, having accustomed themselves to having their milk and cream pasteurized in Kanawha County, to open up that market to persons engaged in the same business, and whose milk is pasteurized in other sections of the state, would be to deprive them of some commercial advantages which they now possess.

The defendant Commissioner of Agriculture appeared and demurred to the petition of the plaintiffs on the following grounds: (1) that the named defendant was not a proper or necessary party defendant, and that those who are proper parties to a controversy of this nature have not been named as such; (2) that the petition, on its face, shows lack of the presence of a justiciable controversy essential to establish jurisdiction under the declaratory judgment act, Chapter 26, Acts of 1941, for the reason that there is no adverse interests between the plaintiffs and the defendant, and that no rights, status or legal relationship, which could be made the basis of any relief, was created by the ordinance of the city; (3) that the sections of the municipal ordinance relied upon by the plaintiffs as having created in them certain rights, status or other legal relationship were, on their face, illegal and void as being unconstitutional; and (4) that in abrogating and modifying the two sections of the milk ordinance of the City of Charleston, the Commissioner of Agriculture acted within the legal scope of his authority.

The court overruled the demurrer, except the first point thereof. It held, and properly, we think, that the City of Charleston, a municipal corporation, should have been made a party to the proceeding. Aside from the apparent need of such action, the declaratory judgment act itself states that "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." The ordinance of the city was directly involved in this proceeding, and no action should have been taken thereon by the trial court before having before it the one party particularly interested therein.

The question with which we are first confronted is whether there is such adverse interest between the plaintiffs and the defendant as to justify the court, under the declaratory judgment act, in entering any order or decree with respect to the questions raised by the petition. While the declaratory judgment act does not in terms say that there shall be such actual dispute or controversy, it has been universally held that before a court can take jurisdiction under declaratory judgment statutes, there must be an actual and justiciable controversy between the parties to any proceeding of that character. It must necessarily be so under our constitution, because circuit courts are vested with power to take jurisdiction of judicial questions only. *Hodges* v. *Public Service Commission,* 110 W. Va. 649, 159 S. E. 834. Therefore, the controversy between the plaintiffs and the defendant in this proceeding must be of such a nature as would warrant a court of law or equity in taking jurisdiction, if the same were asserted in some other proceeding.

In our opinion, the plaintiffs do not have such a right, status or legal relationship, created by the ordinance of the City of Charleston, which the Commissioner of Agriculture abrogated and annulled, as would serve as a basis for any character of suit, action or proceeding in which a court of competent jurisdiction would be warranted in granting any relief. When the city adopted the ordinance of January 4, 1928, it did not surrender its right to repeal or modify the same at any time. No one has a vested right in any law or ordinance, in the sense that a continuance thereof may be demanded, although rights accruing thereunder are always protected up to the time of any repeal or modification thereof. The plaintiffs would not have had any right to complain had the city through action of its proper authorities, adopted an ordinance which would have carried out to the letter the provisions of the regulation promulgated by the Commissioner of Agriculture. Had the city desired to open up the market for milk and cream in the city to all persons complying with the regulations of the standard milk ordinance of the United States Government, it would have been within its rights in so

132

doing. No doubt many persons engaged in the milk business would have been prejudiced thereby, particularly those operating pasteurizing plants within Kanawha County, but a court would not have been warranted in interfering with such action on the part of the city. All this being true, how can the plaintiffs complain of the action of the Commissioner of Agriculture? It may be said that if the commissioner had no legal right to abrogate and annul the ordinance as aforesaid, then any person has the right to question his action. It is true that, broadly speaking, the acts of public officials may be questioned by any citizen affected thereby, but we think this means that it must be some character of prejudice for which he is entitled to seek redress in the courts of the land. Unquestionably, the City of Charleston would have had a right to contest the validity of the regulation of the commissioner, because its own ordinance was being set aside and annulled, and as the representative of the public in the city, would have had the right under the declaratory judgment act, or otherwise, to raise the question of the legality of the regulation. No doubt, under proper allegations, a consumer, or group of consumers, of milk and cream in the City of Charleston would have had the right to question the legality of the regulation, upon a proper showing that the health of the inhabitants of the city might be affected thereby, and, upon a showing of some legitimate interest, the lack of power in the Commissioner of Agriculture to promulgate such a regulation. At the most, petitioners are merely deprived of what may be termed a closed market for their products as against milk and cream pasteurized outside of Kanawha County. All they can complain of is that an additional supply of milk and cream may come into the City of Charleston to compete with their products. Fundamentally, petitioners, as a matter of individual right, are not entitled to any such advantage. The people of the City of Charleston may be entitled to adopt and maintain such an ordinance for their own protection, and for the convenience of inspection, a point which we do not now decide; but producers of milk are not in a position to complain because the milkshed is

widened and competition will be increased. It follows, that, in our opinion, the demurrer to the plaintiffs' petition should have been sustained and the proceeding dismissed, because of lack of any justiciable interest in the petitioners in the matter in dispute of which a court should take cognizance. If these plaintiffs would be unable to vindicate their asserted rights through process of injunction, or otherwise, they are not entitled to seek a declaratory judgment thereon.

There is much authority to sustain this view. In *Nashville-Chattanooga & St. Louis Railway Co.* v. *Wallace*, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191, it was, in effect, held that, under the declaratory judgment act, it was not indispensable that the judgment or award be carried into effect, or even a prayer for relief, but that there must be a controversy of the nature where relief could be granted, such as an injunction in a proper case. We think the same principle is upheld by Borchard, Declaratory Judgments. On page 33 of that work it is stated that "Justiciability is the necessary condition of judicial relief. It is that which the term 'case' or 'controversy' is designed to insure, and the Supreme Court has had frequent occasion to consider the matter." It would serve no useful purpose to attempt to put into this opinion the extensive discussion of this more or less modern development of our law; but we think running through all of these discussions is a recognition of the fundamental principle that only such questions may be settled under the declaratory judgment act as could be settled in some appropriate action in law or equity, if the remedy of declaratory judgment did not exist. The purpose and advantage of securing a declaratory judgment is to avoid the expense and delay which might otherwise result, and in securing in advance a determination of legal questions which, if pursued, can be given the force and effect of a judgment or decree without the long and tedious delay which might accompany other types of litigation. The declaratory judgment statute was enacted by our Legislature in 1941, and is, therefore, in its infancy in this state. As a matter of policy, its use and application should be

restricted to cases of actual controversy and to the type of cases that would lend themselves to the jurisdiction of courts through existing judicial remedies. It should not be used to satisfy the curiosity of parties to disputes where such disputes are not of a nature of which courts may properly take cognizance.

We do not decide either as to the power of the Commissioner of Agriculture to promulgate the regulation of November 10, 1941, nor the validity of the ordinance of the City of Charleston of January 4, 1928. Those questions will have to await their presentation in a proceeding on the part of persons having a right to maintain the same. We do say, however, that we regard both questions as judicial in their nature, such as must be finally determined in a court of competent jurisdiction; and questions which do not properly lend themselves to administrative action on the part of an official who has no power or authority to pass upon questions of a judicial nature.

The City of Charleston, intervening by petition, asked to be made a party defendant, and upon being admitted as a party defendant, filed its answer associating itself with, and adopting, the allegations of the plaintiffs' petition; so that, although a party defendant, the city raised an issue as against its co-defendant, the Commissioner of Agriculture. Under very liberal rules, it might be contended that, inasmuch as an issue had been raised as between the city and the commissioner, the court would be warranted in proceeding to determine the matter. However, being of the opinion that the petitioners had no right to institute the proceeding in the first instance, there was no pending cause before the court in which it could enter any order. Therefore, its order permitting the city to intervene must fall.

The action of the Circuit Court of Kanawha County in overruling the demurrer to the plaintiffs' petition is reversed, and an order will be entered in this Court dismissing the proceeding.

*Reversed and dismissed.*