CARL DOLAN *et al. v.* W. H. HARDMAN *et al.*

(No. 9530)

Submitted February 1, 1944. Decided February 15, 1944.

*Thos. P. Ryan,* for appellants.
*Perry Emmet O'Brien,* for appellees.

LOVINS, JUDGE:

This suit was instituted by Carl Dolan and Okla Dolan, hereinafter referred to as "plaintiffs", against W. H. Hardman and Orah E. Hardman, hereinafter referred to as "defendants", William Robinson, Elizabeth M. Robinson, Freda Mays, Bryan Mays, and West Virginia Gas Corporation. The five defendants last named made no appearance in this suit. Plaintiffs sought to have their rights declared under the Uniform Declaratory Judgments Act. The Circuit Court of Jackson County granted the relief prayed for, and declared the plaintiffs jointly to own a one-fourth interest and Freda Mays and Bryan Mays jointly to own a one-fourth interest in the oil, gas and other minerals underlying a seventy-acre tract of land situate in Jackson County, to which decree defendants prosecute this appeal.

William Robinson and Elizabeth M. Robinson were the owners of the surface of three tracts of land, aggregating seventy acres, and of an undivided one-half interest in the oil, gas and other minerals underlying the same. In 1932 they conveyed said land and their undivided interest in the minerals to the defendants, expressly reserving a vendor's lien to secure the payment of two notes of six hundred dollars each, given as part of the purchase price. Defendants defaulted in the payment of the notes and, in the year 1936, the Robinsons instituted a suit against defendants and another to enforce the vendor's lien. In that

suit, the Robinsons' lien debt in the sum of $1,501.20 was adjudged to be a valid lien, second in priority, a prior lien being held by the Federal Land Bank of Baltimore, the other defendant. The Circuit Court of Jackson County by decree entered on April 6, 1936, decreed that upon the failure to discharge the lien debt of the Robinsons within thirty days of the rising of the court "said land" be sold, subject to the taxes and the first lien held by the Land Bank. The entire record of the vendor's lien suit is not before us. It is not apparent from the decree of sale above mentioned, which is a part of the record in the instant suit, what is covered by the words "said land", but it is alleged in the plaintiffs' bill in the instant suit, and not controverted by defendants, that the land so decreed to be sold was all the interest of the defendants in the land; that is to say, seventy acres of surface in fee and the undivided one-half interest in the oil, gas and other minerals. The decree of sale above mentioned appointed a special commissioner to make sale, directing him to publish notice of the time, terms and place thereof in a newspaper for four successive weeks, and to post said notice at the front door of the court house for a like period. The requirements of the decree were met as to publishing and posting. However, the notice, as published and posted, stated that the oil and gas underlying the land would not be sold. At the sale the Robinsons became the purchasers for the sum of $1,650.00. Although the special commissioner's report of sale is not in the record in the instant suit, the final decree of the vendor's lien suit ratified and confirmed said report, appointed a special commissioner to execute a deed to purchasers, directed payment of costs, and awarded a writ of possession in favor of the purchasers. The decree of confirmation was entered June 15, 1936, at a special term of court, after fair notice had been given defendants, or their counsel of record, as provided by Rule IX of the Rules of Practice and Procedure for Trial Courts in the State of West Virginia.

The decree confirming the sale states that from the special commissioner's report of sale, it appeared that the Robinsons "became the purchasers of the real estate heretofore directed to be sold belonging to the defendants" (W. H. and Orah E. Hardman). Again it does not clearly appear whether the one-half interest in the oil and gas was sold by the special commissioner, but it is alleged in plaintiff's bill in the instant suit that seventy acres of surface and a one-half undivided interest in the oil, gas and other minerals was in fact sold, and that the above-mentioned decree confirmed the same. The special commissioner's deed to the purchasers, the Robinsons, conveyed the seventy acres of surface and one-half the oil, gas and other minerals underlying the same. In support of the allegation that all of the interest and estate of the defendants in said land passed by the sale, plaintiffs filed as an exhibit with their bill an affidavit of the special commissioner making the sale. The affidavit, dated August 11, 1942, states that the portion of the notice of sale which provided that the oil and gas underlying the land would not be sold was inserted in said notice by mistake and contrary to the decree of sale; that at the sale the special commissioner publicly announced such mistake; and that the real estate to be sold was all the interest of the defendants in the land. The defendants' answer herein, to which plaintiffs' demurrer was sustained, and which was not amended or supplemented by another answer, admits that the contents of the above-mentioned affidavit may be true, and that the court may have confirmed such a sale. But it is alleged that any such sale and confirmation thereof was void as to the defendants' undivided one-half interest in the oil and gas by reason of the provision in the notice of sale that the oil and gas would not be sold; and defendants now assert that they are the owners of an undivided one-half interest in the oil and gas above mentioned. Plaintiffs in this suit derive their title thereto by deed of conveyance from the Robinsons. Freda Mays and Bryan Mays each are the grantees of plaintiffs in

this suit of an undivided one-eighth interest in the oil and gas underlying the land. Plaintiffs, Freda Mays, Bryan Mays and the defendants have leased their claimed interests in the oil and gas to West Virginia Gas Corporation, who refuses to recognize the title of plaintiffs and the Mays to the oil and gas, because of the alleged defect in the notice of the special commissioner's sale hereinabove mentioned.

Defendants make numerous assignments of error, which may be condensed as follows: (a) That it was error to overrule defendants' demurrer to the bill of complaint; (b) that the trial court had no jurisdiction to hear this suit and grant declaratory relief; (c) that the sale of a one-half interest in the oil and gas was not advertised, as required by the decree of sale in the vendor's lien suit, and that the special commissioner's sale, the decree confirming and ratifying the report thereof and the deed of conveyance by the special commissioner are inoperative to divest defendants of their title to the one-half undivided interest in the oil and gas; that the proceedings in the vendor's lien suit having failed to pass title, the scope and effect thereof cannot be enlarged or altered by this suit. The assignment of error as to overruling of defendants' demurrer to the bill of complaint is embodied in other assignments of error above noted, and will be discussed therewith. Plaintiffs' demurrer to defendants' answer was sustained, with leave to amend. Defendants did not amend their answer, nor do they challenge by an assignment of error the ruling of the trial chancellor on that phase of this suit. This state of the record renders unnecessary any discussion or disposition of defendants' contention that proof should have been taken and considered herein.

The Uniform Declaratory Judgments Act does not confer on courts of this State new jurisdiction nor extend jurisdiction in existence prior to its enactment, unless it may be said that authority to grant declaratory relief instead of coercive relief is an extension of jurisdiction.

The power granted to courts of record appears from the following: "Courts of record within their respective jurisdictions shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for * * *." Section 1, Chapter 26, Acts of the Legislature, 1941. The enumeration of specific subjects of litigation in Sections 2, 3, and 4 of the Act is not restrictive when declaratory relief will end a controversy "or remove an uncertainty". See Section 5 of the Uniform Declaratory Judgments Act. However, the powers conferred by the Act are not unlimited. An actual controversy, susceptible of judicial determination must be presented, wherein a legal right is claimed by one party and denied by another before a suit or action for declaratory relief may be heard and determined. *Mainella* v. *Board,* 126 W. Va. 183, 27 S. E. 2d 486. Where the question in dispute is not judicial in character, declaratory relief will be denied. *Crank* v. *McLaughlin,* 125 W. Va. 126, 23 S. E. 2d 56.

Essentially, this is a suit to quiet title to land, with a prayer for declaratory relief substituted for the usual prayer for coercive relief. The power and authority of a court of equity to quiet title to land is independent of statute and comes from general equity principles and practice. *Tennant's Heirs* v. *Fretts,* 67 W. Va. 569, 68 S. E. 387. Even though the claim is based on a void writing, the title may be quieted by a suit in equity. *Whitehouse* v. *Jones,* 60 W. Va. 680, 55 S. E. 730.

The plaintiffs assert the ownership of an undivided one-fourth interest in the oil, gas and other minerals, and allege that they have conveyed a similar interest to Freda Mays and Bryan Mays. The ownership so asserted is denied by the defendants, they having leased the land to the defendant, West Virginia Gas Corporation. The defendants also assert in the answer appearing in the record herein that they are the owners of an undivided one-half

interest in the oil, gas and other minerals. It may be noted that the one-half interest in all minerals other than oil and gas was covered by the notice of sale in the vendor's lien suit.

The assertion of ownership by the defendants is a claim of title to land, has apparent validity and has made the title intricate and doubtful, which renders the assertion of ownership by the defendants a cloud on the title claimed by plaintiffs, Freda Mays and Bryan Mays. See *Amick* v. *Land Co.*, 119 W. Va. 485, 487, et seq., 194 S. E. 268, and *Gardner* v. *Loan Co.*, 108 W. Va. 673, 152 S. E. 530. The claim of ownership by the defendants has the practical effect of temporarily depriving plaintiffs of an income from the property claimed by the, latter. We reach the conclusion that the trial court having inherent jurisdiction to quiet title to land, it would have jurisdiction of a suit of like nature wherein declaratory relief is asked. The existence and substantial nature of the controversy between the plaintiffs and defendants clearly appearing leads to the further conclusion that this suit may be brought, heard and declaratory relief granted. Although a more complete remedy may be afforded by an ordinary suit to quiet title rather than a suit for declaratory relief, such does not preclude the granting of declaratory relief.

The remaining question for discussion relates to the sale made in the suit of the Robinsons against the Hardmans et al. Defendants contend that the undivided one-half interest in the oil and gas was not advertised for sale as required by the court's decree. It is clear that the notice in the special commissioner's sale was without ambiguity in the exclusion of the oil and gas from sale. It is equally clear that the minerals other than the oil and gas were included in such notice of sale. Defendants contention in the instant suit, therefore, can only relate to the oil and gas underlying the three tracts of land being based on the wording of the notice excluding the gas and oil interest from sale. Plaintiffs attempt to meet this omission in the notice by filing the affidavit of the

special commissioner hereinabove mentioned. The affidavit of the special commissioner showing the deviation from the notice of sale cannot be considered as showing that the undivided one-half interest in the oil and gas was in fact sold by the special commissioner in the vendor's lien suit. *Berry* v. *O'Dell*, 122 W. Va. 58, 7 S. E. 2d 340. In the *Berry* case the notice there under consideration was given by the trustee under a deed of trust. Here the notice of sale was given by a special commissioner appointed by a decree of sale. But the distinction here made does not militate against the soundness and applicability of the principle announced by implication in the *Berry* case.

The decree of sale in the vendor's lien suit did not describe the land with certainty. It is referred to therein as "* * * the lands in the bill and proceedings in this cause mentioned and described * * *." Subsequently it is referred to as "* * * then said land be sold at public auction * * *" and "* * * that the said land be sold subject to any and all taxes due and payable thereon * * *". Moreover, the deed from the Robinsons to defendants filed as an exhibit with the bill of complaint in the instant cause, shows a conveyance to the Hardmans in the first instance of all of the interest of the Robinsons in the oil, gas and other minerals. The decree confirming the report of sale recites that the Robinsons "became the purchasers of the real estate heretofore directed to be sold belonging to the defendants, W. H. Hardman and Orah E. Hardman".

The only conclusion to be reached from the recitals of the decrees entered in the suit between the Robinsons and the defendants and the undisputed allegations of the bill herein is that the undivided one-half interest in the oil and gas underlying the three tracts of land was sold and so reported to the court, and that such sale was confirmed.

The decree of confirmation entered in the vendor's lien suit was erroneous in that the notice of sale as published and posted did not comply with the decree of sale theretofore entered. It is not apparent whether the undivided

one-half interest in the oil and gas was of the value of five hundred dollars or more. Nevertheless, the court is authorized to require the sale to be advertised in a newspaper. Code, 55-12-2. And the special commissioner having deviated from the directions of the decree of sale, it was error to confirm the same. *Long* v. *Perine*, 41 W. Va. 314, 319, 23 S. E. 611; *Talley* v. *Starke's Admx.*, 6 Gratt. 339. If the undivided interest in the oil and gas was of the value of five hundred dollars or more, advertisement of the sale in a newspaper was mandatory, and the omission to advertise the sale was error. Code, 55-12-2. *Thompson* v. *Land & Coal Co.*, 77 W. Va. 782, 88 S. E. 1040. See also *Gauley Coal Land Asso.* v. *Spies*, 61 W. Va. 19, 55 S. E. 903; *Duncan* v. *Custard*, 24 W. Va. 730.

Plaintiffs argue that their title is not affected even though the decree of confirmation should have been reversed, relying on Code, 55-12-8. It is true that upon confirmation of a judicial sale where the court has jurisdiction and there is no fraud or adventitious circumstance, the title of a purchaser who is not a party to the suit is protected in event of a reversal. *Thompson* v. *Land & Coal Co., supra;* Code, 55-12-8. But the Robinsons were parties plaintiff in the suit to enforce the vendor's lien, were vitally interested therein, and finally became the purchasers at the special commissioner's sale. They could not take the benefit of the erroneous decree confirming the sale which they caused to be made. The title of the plaintiffs rests on the title acquired by the Robinsons at the special commissioner's sale and is not protected by Code, 55-12-8. *Dunfee.* v. *Childs*, 45 W. Va. 155, 30 S. E. 102. Furthermore, the provisions of Code, 55-12-8, are inapplicable for the reason that the decree of confirmation was made June 15, 1936, and timely presentation of a petition for an appeal not having been made, said decree cannot be reversed for the error hereinbefore mentioned. Code, 58-5-4. But the title of plaintiffs is valid for a reason to be presently stated.

The jurisdiction of the Circuit Court of Jackson County of the parties and the subject matter in the vendor's lien suit affirmatively and clearly appears from the decrees of sale entered therein, and the description of the lands subject to the lien. *Fulton* v. *Ramsey,* 67 W. Va. 321, 326, 68 S. E. 381. Furthermore, nothing to the contrary appearing in the record, there is a presumption of such jurisdiction. *Coal & Coke Co.* v. *Coal & Coke Co.,* 51 W. Va. 474, 41 S. E. 917. See also *George* v. *Kittle,* 102 W. Va. 613, 135 S. E. 900. The decree of sale, though erroneous, having been pronounced by a court having jurisdiction of the parties and subject matter, in the absence or fraud or adventitious circumstances, may not be subjected to collateral attack as is attempted by defendants in the instant suit. *B. & O. R. R. Co.* v. *P. W. & Ky. R. R. Co.,* 17 W. Va. 812.

Defendants in this case were parties to the suit of Robinson against Hardman (the vendor's lien suit). They had the right to prosecute a timely appeal therein to correct the error hereinbefore mentioned. They failed to exercise that right. May they be heard now to say that the erroneous decree confirming the judicial sale of their entire interest in the three tracts of land is inoperative to pass title to the purchasers at the judicial sale? We think not.

The decree confirming the sale to the Robinsons is now final and conclusive and the special commissioner's deed made pursuant thereto effectively conveyed title to the surface of the three tracts of land and to the undivided one-half interest in the oil, gas and other minerals underlying the same to William Robinson and Elizabeth M. Robinson, plaintiff's grantors.

Accordingly the decree of the Circuit Court of Jackson County is affirmed.

*Affirmed.*