AMERICAN SOUTHERN INSURANCE COMPANY, a corporation, Plaintiff,

v.

Oscar ENGLAND, Janet Shufflebarger and Josephine Anderson, Defendants.

Civ. A. No. 951.

United States District Court
S. D. West Virginia,
Bluefield Division.

Sept. 30, 1966.

Robert M. Richardson, Richardson & Hancock, Bluefield, W. Va., for plaintiff.

D. Grove Moler, Mullens, W. Va., for defendant Oscar England.

Warren R. McGraw, Pineville, W. Va., for defendants Janet Shufflebarger and Josephine Anderson.

CHRISTIE, District Judge:

Plaintiff, American Southern Insurance Company, a corporation, seeks declaratory judgment pursuant to 28 U.S.C.A. § 2201, with regard to liability and coverage under a certain automobile insurance policy issued to defendant Josephine Anderson, on a 1959 Pontiac automobile. All parties have moved for Summary Judgment.

On September 9, 1964, defendant Janet Shufflebarger, the adult married daughter of defendant Josephine Anderson, who at the time resided at her mother's home, drove her mother's automobile, on which plaintiff held liability insurance, on an errand for and at the direction of her mother. In the course of this trip Mrs. Shufflebarger drove into the rear of a stopped pick-up truck owned and operated by defendant Oscar England. Physical damage to the vehicles was minimal, the right front fender of the Anderson car having been dented and the rear bumper of the England truck having been indented. At the time, neither party appeared to have sustained physical injuries, however, later that evening Mr. England allegedly "blacked out" and was hospitalized as a result of the accident.

Mrs. Shufflebarger, because of concern over her mother's health, did not advise Mrs. Anderson of the mishap upon returning home that evening. When asked about the dented fender a few days later, the daughter explained that she had struck a pole. Mrs. Anderson had the damage repaired at an expense of $51.24. There is no contention that Mrs. Anderson had any knowledge of the actual cause of the dent until January 1966, when so advised by an insurance adjuster.

To say that Mrs. Shufflebarger has been less than candid concerning this accident is as charitable as the circumstances allow. Within a few days of the occurrence, Mrs. Oscar England apparently advised Janet Shufflebarger of the injuries claimed to have been suffered by her husband. Although Mrs. Shufflebarger contends that she only confirmed what Mrs. England was able to discover through an independent investigation, the Englands became aware that John Shufflebarger, Janet's husband, carried automobile insurance through Flat Top Insurance Agency, Bluefield, West Virginia, and advised the agency of the accident. During this period Mr. Shufflebarger was away from the Anderson residence except on week-ends and he had no knowledge of the accident until October 1965.

On January 27, 1965, an insurance adjuster representing Mr. Shufflebarger's insurance carrier interviewed Mrs. Shufflebarger and took a signed statement from her regarding the accident. She contends that she did not read the statement before signing it and that it contains a number of inaccuracies. However, she does admit having told the adjuster that at the time of the accident she was driving her husband's automobile.

Negotiations for settlement of the matter between the Englands and the insurance carrier for the Shufflebargers proved fruitless and a suit was instituted in the Circuit Court of Wyoming County, West Virginia against John and Janet Shufflebarger. Notice of this suit was apparently the first knowledge John Shufflebarger had of the accident. His wife thereafter told him of the actual events and on December 21, 1965, they made a statement to an insurance adjuster wherein Mrs. Shufflebarger disclosed that she was driving her mother's automobile at the time of the accident. Shortly thereafter, the adjuster advised Mrs. Anderson of this and she informed her own insurance carrier, the plaintiff herein, the next day.

Plaintiff seeks to deny liability on the ground of failure to give timely notice, and the pertinent provisions of the insurance contract relied upon are as follows:

"Persons Insured

"The following are insured under Part I:

"(1) The named insured and any resident of the same household,

(2) any other person using such automobile, provided the actual use

thereof is with the permission of named insured;

"Definitions

"Under Part I:

" 'named insured' means the individual named in Item I of the declarations and also his spouse, if a resident of the same household; 'insured' means a person or organization described under 'persons Insured';

"Conditions

"3. Notice: In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable * * *."

The question for determination is whether or not the conduct of Janet Shufflebarger, an insured under either item (1) or (2) of the above-quoted policy provisions, is such as to amount to a failure to comply with the condition precedent of notice, thus relieving plaintiff insurer of any liability.

■■ The law is well settled in West Virginia that the purpose of notice provisions in automobile liability insurance policies is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the event, and if it chooses to do so, to settle the claim or defend the action in a court of law. Under West Virginia law, it is not necessary for the delay in receiving the notice to have resulted in prejudice to the insurer if in fact the delay is unreasonable under the circumstances. Ragland v. Nationwide Mutual Ins. Co., 146 W.Va. 403, 120 S.E. 2d 482 (1961). This being a diversity case, with no federal question involved, we must apply the substantive law of that state. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Pickett v. Aglinsky, 110 F.2d 628 (4th Cir. 1940).

■■ It is also clear that it is immaterial whether, in an automobile liability policy, the named insured or the additional insured or any other person involved notifies the insurer of the occurrence of an accident, if in fact notice is given. However, " * * * if the notice of the accident required by the policy of liability insurance is not given by or on behalf of the named insured as soon as practicable or by an additional insured under the omnibus clause of such policy, such additional insured will not be covered and the insurer will be relieved of its liability under such policy." Helvy v. Inland Mutual Insurance Company, 148 W.Va. 51, 132 S.E.2d 912, 919 (1963).

■ It is not exactly clear when or how the Flat Top Insurance Agency, general agent for both the Andersons' and Shufflebargers' insurers, received notice of the accident, but it was apparently through the efforts of Mrs. England. In any event, though she claims to have called the agency soon after the accident, there is no evidence that Mrs. Shufflebarger made a report of the accident until contacted by the agency. Mrs. Shufflebarger admitting knowing that her mother had automobile insurance, and however meritorious her concern for her mother's health may have been in initially failing to tell her of the accident, it can hardly be said to justify her attempt to shift liability for the accident to her husband's insurance carrier. She was an adult and though she could not anticipate that her first misrepresentations would lead to their present far-reaching consequences, it is obvious that her conduct, after having been advised of the claimed extent of the injuries, fails to comply with the required policy provisions. Those provisions require that notice of the occurrence be furnished in writing as soon as practicable by or on behalf of the insured. Mrs. Anderson was the *named insured* and the policy does not use this term interchangeably with *insured*. One

is much broader than the other. Unlike the policy in Helvy v. Inland Mutual Insurance Company, supra, there is no requirement that the *named insured* shall give the insurer notice when a loss occurs, but rather that the *insured* shall do it. Nor is the case of Mandell v. Fidelity & Cas. Co., 170 Mass. 173, 49 N.E. 110 (1898), in which the Court concluded that the insured (named insured) and the insurer must have been deemed to have intended that the notice would be given upon the knowledge of the insured (named insured) himself, applicable since in the instant case Janet Shufflebarger, though not the named insured, was the insured, and under the express wording of the contract the duty was hers to notify the insurer as soon as practicable.

■ While inability to give notice because of ignorance as to the location of the policy and the name of the insurer may excuse a delay, Gifford v. New Amsterdam Casualty Co., 216 Iowa 23, 248 N.W. 235 (1933), there is no showing that information concerning the mother's policy was beyond her reach for any reason other than Mrs. Shufflebarger's reluctance to upset her mother by telling her of the accident. It was held in Unverzagt v. Prestera, 339 Pa. 141, 13 A.2d 46 (1940), that where one driving an automobile, lent to him by the owner, was involved in an accident causing serious injuries but did not inquire whether the owner had liability insurance or even report the accident to the owner, he did not exercise due diligence in reporting the accident and hence failed to comply with the policy requirement of giving notice as soon as practicable.

In the instant situation, Mrs. Shufflebarger, as the insured and knowing her mother had liability insurance, did not give notice as soon as practicable under the circumstances, and, as we have seen, the question of whether or not this was prejudicial to the insurer is of no moment under the applicable West Virginia case law. Ragland v. Nationwide Mutual Ins. Co., supra. Consequently, plaintiff American Southern Insurance Company is relieved of any liability as a result of the September 9, 1964 accident insofar as Mrs. Shufflebarger is concerned.

■ However, the policy also provides: "The insurance afforded under Part I applies separately to each insured against whom claim is made or suit is brought * * *." Thus, the fact that the insurer is relieved of liability toward Mrs. Shufflebarger does not necessarily apply as well to the named insured Mrs. Anderson. For it to apply, the daughter's conduct must either be imputable to the mother or the mother must have herself failed to exercise proper diligence in the matter.

■ Plaintiff contends that, aside from any information possessed by her daughter, Mrs. Anderson was under a duty to advise her insurer on the basis of knowledge of the dented fender. However, when consideration is given to the nature of her insurance (liability not collision), the triviality of the damage to her car, and the excuse given by the daughter (which this record does not show she had reason to doubt), it is apparent that, rather than an occurrence as would lead a reasonable prudent person to believe might give rise to a claim for damages, this is an instance where the accident appeared trivial and a reasonable prudent person would have no reason to suspect a claim for damages would arise or that an injury insured against was involved. 45 C.J.S. Insurance § 1056 (1946).

Two of the theories under which Mrs. Anderson may be held liable, and thus her insurer, for the negligence of Janet Shufflebarger have no application under the undisputed facts here. First is that, going on the errand, Janet became the servant of her mother; and second is the application of the family purpose doctrine. In either event, it must be borne in mind that, while the law in West Virginia does not require than an insurer be prejudiced by an unreasonable delay in receiving notice of an accident in order to escape liability, under what has been termed a technical policy defense, when the individual policyholder's position in a contract of this nature is considered,

an extension of this defense beyond the scope of the decided cases should be done with reluctance. Helvy v. Inland Mutual Insurance Company, supra.

■ Insofar as the family purpose doctrine is concerned, the fact that Janet Shufflebarger was the adult married daughter of Mrs. Anderson would not prevent its application. Watson v. Burley, 105 W.Va. 416, 143 S.E. 95, 64 A.L.R. 839 (1928). However, it is often said that the extension of the agency theory to include the family purpose doctrine is a legal fiction, Eagon v. Woolard, 122 W.Va. 565, 11 S.E.2d 257, 134 A.L.R. 970 (1940), and though liability for the negligence of family members is often placed on the owner of the vehicle, there are apparently no West Virginia cases wherein the wilful failure of the driver to report the occurrence of an accident to the insurer has been imputed to the owner. Consequently, the placing of the daughter's failure to notify the insurer as soon as practicable on the mother must be based on the actual relationship between the parties and not on this doctrine.

An examination of the generally accepted definition of master and servant indicates that this was not the relationship between the parties at the time of the accident. There was no express or implied contract of employment between them, nor was there a situation wherein the mother would have had the right to select, direct, control or discharge the daughter in the usually accepted sense. 57 C.J.S. Master and Servant § 563 (1948). It was instead a direction or request to do a single task by means of the mother's automobile, more in the nature of a special or quasi agency than of master and servant.

■ There is no need to cite the numerous cases which stand for the propositions that a principal is charged with an agent's knowledge coming to the agent in the scope of his authority and that he is not charged with knowledge acquired outside such scope. Though dealing for the most part with corpora-

tions and employers, they serve as precedents for the present situation. Nevertheless, we must not lose sight of the fact that this particular situation is to some degree controlled by the terms of the contract. While extending coverage to additional insureds, the policy also required them to report or to have the accident reported. The very fact that it was Mrs. Anderson's automobile that was involved in the accident gives rise to a rebuttable presumption that the driver was acting at the time as her agent or servant. Malcolm v. American Service Co., 118 W.Va. 637, 191 S.E. 527 (1937); Payne v. Kinder, 147 W.Va. 352, 127 S.E.2d 728 (1962). In this instance it is admitted that Mrs. Shufflebarger was using the automobile at her mother's direction and for her mother's benefit. There is no question that the accident occurred while she was in the scope of her mission. Thus, knowledge of events coming to Mrs. Shufflebarger while she was within the scope of her agency and that affected that agency—driving her mother's vehicle on an errand—is imputable to the principal Mrs. Anderson. This is based on the general rule that there is a presumption that an agent will disclose what it is his principal's business to know and the agent's concomitant duty to impart. Clifton v. Tomb, 21 F.2d 893 (4th Cir. 1927). Thus, Mrs. Anderson's lack of actual knowledge of the true circumstances is no defense to her daughter's misconduct.

■ The defendants have contended that, in view of the fact that the Flat Top Insurance Agency, general agent for American Southern Insurance Company, was advised of the accident relatively soon after it occurred and that they were connected with the actual investigation of the circumstances on behalf of John Shufflebarger's insurer, this information was thereby readily available to American Southern and their position is no different than had the information been given them originally. However, assuming that all this information were available to the plaintiff insurer, as though the investigation had originally been con-

ducted on its behalf, nevertheless, the fact remains that persons representing another insurer (not Mrs. Anderson's) carried on the protracted negotiations with the injured party as to possible settlement of his claim. We cannot presume that the outcome of these negotiations, even assuming they would have been conducted through the same representatives, would have resulted in the parties being involved in the pending action in the Circuit Court of Wyoming County. Such might have been the result, but, on the other hand, American Southern might well have settled the matter before it reached this stage. We will never know what might have been the situation had Mrs. Shufflebarger's conduct been proper.

We, therefore, conclude that the American Southern Insurance Company had no knowledge of the fact that one of its insureds, within the meaning of Mrs. Anderson's policy, had been involved in an accident before December 21, 1965, when the Shufflebargers advised an adjuster for their own insurance carrier of the true identity of the automobile involved in the mishap. And this is true because of its untimeliness (fifteen months after the accident) even if the adjuster had been a proper person to receive notice on behalf of American Southern. Under the circumstances, this delay in giving notice was unreasonable and Mrs. Anderson's actual lack of knowledge prior to that time does not constitute an excuse. It is a well settled rule that when one of two innocent persons, each of whom is guiltless of an intentional wrong, must suffer a loss it should be borne by the one whose conduct has rendered the injury possible. Jones v. Evans, 123 W. Va. 394, 15 S.E.2d 166 (1941). Mrs. Anderson, not her insurer, placed Janet Shufflebarger in a position whereby this situation arose.

Therefore, in accordance with the provisions of 28 U.S.C.A. § 2201, it is hereby found that, as a matter of law, the defendant Janet Shufflebarger failed to comply with the condition precedent in that certain insurance policy No. ACF–R 44136, issued by plaintiff herein, American Southern Insurance Company, to Josephine Anderson, the named insured, on a 1959 Pontiac automobile, and as a result thereof the said American Southern Insurance Company is relieved of any liability for the consequences of the accident that occurred on September 9, 1964, when the said Janet Shufflebarger was an additional insured within the meaning of the policy; nor does the said insurance company owe any defense on behalf of the said Janet Shufflebarger in the civil action now pending in the Circuit Court of Wyoming County, West Virginia, wherein Oscar England is plaintiff and Josephine Anderson and Janet Shufflebarger are defendants.

Where jurisdiction of a federal court depends on diversity alone, as it does here, in the absence of state decisional law on the point in controversy, it is the duty of the federal court to determine the best it can what the highest state court would find the law to be on the point if the case were before it on the same factual basis. Markham v. City of Newport News, 292 F.2d 711 (4th Cir. 1961). Therefore, under this well-established rule, it is our belief that, were the instant factual situation presented to the Supreme Court of Appeals of West Virginia, its findings as to the legal consequences of the agency relationship would be those we have reached. Consequently, it is also declared that the failure of her agent, Janet Shufflebarger, to comply with this condition precedent is imputable to Josephine Anderson, the named insured in the aforementioned policy, and as a result the plaintiff, American Southern Insurance Company, owes Josephine Anderson no duty of coverage or defense in said pending state court action as a result of the accident of September 9, 1964.

Under the circumstances, plaintiff's Motion for Summary Judgment is hereby granted in the manner above stated and defendants' like motions are denied.